## LINCOLN SCHOOL TOWNSHIP *v.* AMERICAN SCHOOL FURNITURE COMPANY.

### [No. 4,571. Filed October 8, 1903.]

TOWNSHIPS.—*Township Reform Law.*—*Repeal.*—The provisions of the township reform law (Acts 1899, p. 150) relative to the control and management of the affairs of the school townships are not repealed by the act of March 4, 1899 (Acts 1899, p. 424), authorizing township trustees to have charge of the educational affairs of their respective townships, employ teachers, provide schoolhouses, furniture, apparatus, etc., but the two acts should be construed *in pari materia.*

From Hendricks Circuit Court; *T. J. Cofer*, Judge.

Action by the American School Furniture Company against Lincoln School Township. From a judgment for plaintiff, defendant appeals. *Reversed.*

*R. W. McBride, C. S. Denny, G. W. Brill* and *G. C. Harvey*, for appellant.
*E. G. Hogate* and *J. L. Clark*, for appellee.

WILEY, J.—This was an action by appellee against appellant to recover for certain furniture and apparatus furnished appellant. Complaint in four paragraphs. Demurrer to each paragraph for want of facts overruled. Plea in abatement in two paragraphs. Demurrer to each paragraph sustained. Answer in general denial and two affirmative paragraphs. Demurrer to each affirmative paragraph sustained. Trial by court. Judgment for appellee. Motion for a new trial overruled. Exceptions reserved to and error assigned on each adverse ruling.

The substantial averments of the first and second paragraphs of complaint, with the exception of the exhibits and the descriptions of the property, are identical, and are in

substance as follows: That on September 10, 1900, the said school township, through its duly authorized, elected, and acting trustee, John F. Lingeman, contracted in writing with the plaintiff to purchase of plaintiff, for cash to said plaintiff, the following articles of furniture and apparatus for said school township, to wit (here follows description of property), all for the agreed price of $———; that said furniture, as contracted for, and as above set out, was furnished and delivered to said school township in accordance with the terms and conditions of said contract, and the same is now in use in the high school building of said Lincoln township, Hendricks county, Indiana. A copy of said contract is filed herewith, and made a part of this paragraph, and marked "exhibit ———" (exhibit A, a contract for desks and chairs, made a part of the first paragraph, and exhibit B, a contract for a bell and twenty-eight maps, made a part of the second paragraph). Plaintiff also says that before said contract was made and said goods contracted for, the said trustee of said township advertised, as by law provided, for bids for said articles of apparatus, and the bid of the plaintiff was the lowest and best bid received, and the advisory board of said township accepted said bids and made an entry on their records authorizing and directing the said trustee to purchase of the plaintiff the apparatus and furniture above set out; that the pay for said school apparatus and furniture as contracted for and delivered as aforesaid has long since become due, and payment has often been demanded, but the defendant has refused and still refuses to pay the same. Wherefore, etc.

The third and fourth paragraphs of the complaint are not dissimilar in substance, and allege, in effect, that on September 10, 1900, the school township, through its duly and legally authorized, elected, and acting trustee, John F. Lingeman, entered into a contract in writing with the plaintiff, which contract is in the words and figures fol-

lowing, to wit (here follows a copy of the contract), by which contract the defendant agreed to purchase of the plaintiff the articles and property therein named, to wit (here follows an enumeration of the desks and chairs, in the third paragraph; and the bell and maps, in the fourth paragraph), all for the agreed price of $————; that said items so set out were for the use of the defendant, and were useful, suitable, and necessary for the benefit of the schools of defendant, and were of the reasonable value of $————, the amount agreed to be paid for the same; that plaintiff, in pursuance of his contract as above set out, delivered said school furniture to the defendant, and defendant received the same, and has occupied, used, and appropriated the same for the benefit of his said schools, and is now using said furniture; that the pay for the school furniture as contracted for and delivered as aforesaid was demanded of the defendant immediately after the same was delivered, but the defendant refused and still refuses to pay for the same.   Wherefore, etc.   In these two paragraphs recovery is sought upon the *quantum meruit.*   From the view we have taken of the law applicable to the facts disclosed by the complaint, it is unnecessary to set out or consider the answer.

The question of controlling influence, as presented by the record, arises upon the action of the trial court in overruling the demurrer to each paragraph of the complaint. If neither paragraph of the complaint, tested by the demurrer, states a cause of action, it is unnecessary to consider subsequent rulings as affecting other pleadings.

It is essential to the determination of the sufficiency of the complaint to consider some of the statutory provisions relating to the power and prescribing the duties of township trustees as defined by the act of 1899, commonly known and designated as the township reform law, and the subsequent act of 1901.   The act of 1899 (Acts 1899, p. 150) provides for the appointment and subsequent

election of a township advisory board, and prescribes their duties. The board is to act in an advisory capacity with the township trustee in fixing the rate of taxation, in determining township expenditures upon estimates furnished by the trustee, and clothes the board with certain authority in specific matters. At the annual meeting of the advisory board, among other things, section four requires that the trustee shall present to the board a detailed and itemized statement in writing "of all the property and supplies on hand whether in use or in store, for road, school and other purposes; * * * the items of school supplies necessary for each school." Section six of the act provides: "In no event shall a debt of the township, not embraced in the annual estimates fixed and allowed, be created, without such special authority, and any payment of such unauthorized debt from the public funds shall be recoverable upon the bond of the trustee," etc. The term "special authority" as above used refers to authority given by the board at a special meeting of the board, upon call of the trustee, to determine whether an emergency exists for the expenditure of any sums not included in the existing estimates and levy as fixed at the annual meeting. Section nine of the act provides: "If he [the trustee] desires to purchase any school furniture, fixtures, maps, charts or other school supplies, excepting fuel * * * in such amounts as may be authorized by the advisory board, in any year, he shall make an estimate of the kinds and amounts, itemized particularly, to be used by bidders therefor." The same section also provides: "When a bid is accepted, a proper contract shall then be reduced to writing * * * and be signed by the successful bidder and the trustee, who shall require the bidder to give bond with security," etc. Section eleven of the act, provides that, "all contracts made in violation of this act shall be null and void." All the provisions of this act were in force when the contracts in suit were made, unless, as contended by appellee, certain

of them were repealed by the act of March 4, 1899 (Acts 1899, p. 424). It is urged with much force and vigor that the latter act repealed the act of February 27 (Acts 1899, p. 150), in so far as the former law related to and controlled township trustees in the management of the affairs of the school township. The rulings of the trial court upon the demurrers to the various pleadings seem to indicate that it proceeded upon the theory that the latter act repealed the former in so far as it related to the powers and duties of the school township. Counsel for appellant concede, in argument, that if, in relation to the affairs of the school township, the trustee is not governed by the provisions of the "reform law" (Acts 1899, p. 150), then the rulings of the trial court were right, and the judgment should be affirmed.

The act of March 4, 1899, contains three sections, aside from the repealing and emergency clauses. Section one provides that township trustees shall take charge of the educational affairs of their respective townships. It empowers them to employ teachers, to locate conveniently a sufficient number of schools, to build or provide houses, furniture, apparatus, etc.; also provides that a trustee may establish and maintain in his township at least one graded high school; that the school trustees of two or more school corporations may establish and maintain joint graded high schools; that a trustee, instead of establishing a graded high school, may pay the tuition of his pupils competent to enter such school to another school corporation, such payment to be made out of the special school revenue; and that no such graded high school shall be built unless there are at least fifteen common-school graduates of school age residing in the county. Section two fixes the duration of the term of school in each township, and empowers the trustee to "authorize a local tuition levy sufficient to conduct a six months term of school each year based on estimates and receipts from all sources for the previous year: * * *

Provided, such levy shall not exceed the limit now provided by law." Section three provides that the "school trustees shall have the care and management of all property, real and personal, belonging to their respective corporations for common-school purposes, except the congressional township school lands, which lands shall be under the care and management of the trustee of the civil township," etc.

Opposing counsel agree that the latter act is substantially a reënactment of other statutes then in force, and as section four repeals "all laws and parts of laws inconsistent with this act," the present important question is to determine whether there are any provisions of the act of February 27, 1899, inconsistent with the act of March 4, 1899.

There are some general rules applicable to the repeal of statutes that may be briefly noted: (1) Repeals by implication are not favored. (2) Repeals by implication are recognized only when the earlier and later acts are repugnant to or are irreconcilable with each other. In such case, if the two acts, by a fair and reasonable interpretation, can be made to operate in harmony, both will be upheld, and the later one will not be regarded as repealing the former by construction or intendment. (3) Where two statutes relating to the same subject-matter are enacted at different dates, but during the same session of the legislature, the presumption is that the lawmaking body intended that both should be operative and should be construed together. (4) The subsequent action of the legislature with reference to the subject-matter may be looked to and considered in determining the legislative intent as to a particular act. By the act of March 4, *supra,* it is evident there was no direct or express repeal of that part of the township reform law pertaining to the duties of school trustees. An express or direct repeal is where the repealed act is specifically designated in the repealing act.

It follows that if the former act was repealed, it was by implication, unless the two acts are repugnant to or irreconcilable with each other. It has been declared that where a new statute covers the whole subject-matter of an old one, adds new provisions, and makes changes, and where such new law, whether it be in the form of an amendment or otherwise, is evidently intended to be a revision, and to take the place of the old, it repeals the old law by implication. *Nichols* v. *State,* 27 Ind. App. 444; *Thomas* v. *Town of Butler,* 139 Ind. 245; *Warford* v. *Sullivan,* 147 Ind. 14. The act of March 4, *supra,* does not pretend to cover the whole subject-matter of the act of February 27, *supra;* it does not make any changes, and it is evident that it was not intended to be a revision, or to take its place. Giving to it the most liberal construction, we do not see where it is repugnant to or irreconcilable with it.

The two acts under consideration were passed by the same legislature, and only five days elapsed between their passage. It is too well understood to admit of debate or conjecture why the reform law was passed. It is sufficient to say that it was to correct evils which had grown up under previous laws, and to prevent unwarranted raids upon township treasuries. It is common history of the State, and hence courts take notice of it, that many of the evils with which the people and the legislature were confronted grew out of the unlimited authority which township trustees assumed, under the old law, pertaining to their duties in the management and control of the common schools. It was to curtail and limit that authority in large measure that caused the legislature to pass the township reform law. If the act of March 4, *supra,* repealed that law, as contended by appellee, we would have to conclude that the legislature, after having enacted a law looking to the better protection of the interest of the people in the management and control of township business, deliberately attempted to undo its good work by passing the act of

March 4, by placing the affairs of the townships, so far as they pertain to the management and control of the common schools, in the exclusive control of the trustees, where they rested prior to the passage of the reform law.   This would be inconsistent and unreasonable, and we can not impute to a coördinate branch of the government either inconsistency or unreasonableness.   To determine the intent of the legislature courts may look to subsequent legislation pertaining to like subject-matters.   By the act of March 11, 1901 (Acts 1901, p. 415), the legislature amended §§6 and 8, of the act of February 27, 1899, *supra*.   The amended §6 contains a special provision relating to the construction of school buildings.   If the legislature intended by the act of March 4, 1899, *supra,* to repeal the act of February 27, 1899, *supra,* that pertained to the duties of township trustees in the management and control of schools, it would not have subsequently amended the law it so intended to repeal, by injecting into it provisions which pertain to the duties of township trustees, relating to the expenditure of money for the common schools.   As above stated the act of March 4, 1899, was a substantial reënactment of former existing laws.   It can not be said with any pretense of reason that, if the legislature had not passed the act of March 4, 1899, township trustees would not have been subject to all the provisions of the township reform law.   It follows that the reënactment of the preëxisting laws did not affect their duties or extend their powers in respect to the reform law.

That courts may look to subsequent legislation in determining legislative intent, see Sutherland, Stat. Constr., §311; *Doggett* v. *Walter,* 15 Fla. 355; *Bigelow* v. *Forrest,* 9 Wall. 399, 19 L. Ed. 696; *Stout* v. *Board, etc.,* 107 Ind. 343; *May* v. *Hoover,* 112 Ind. 455; *Hunt* v. *Lake Shore, etc., R Co.,* 112 Ind. 69.   It will be presumed that the legislature, in enacting the later statute, did not intend to interfere with or repeal a former law relating to the

same subject-matter, unless the repugnancy between the two is irreconcilable. Sutherland, Stat. Constr., §152; *State* v. *Smith,* 59 Ind. 179; *State* v. *Wells,* 112 Ind. 237. The two statutes under consideration were enacted on different dates, but at the same session of the legislature, and both relate to the duties of township trustees in relation to their respective school townships. Under such conditions and facts the presumption will be indulged that they should both be operative, and should be considered together. Sutherland, Stat. Constr., §283; *Indiana Cent. Canal Co.* v. *State,* 53 Ind. 575; *Shea* v. *City of Muncie,* 148 Ind. 14; *State* v. *Rackley,* 2 Blackf. 249; *Wright* v. *Board, etc.,* 82 Ind. 335.

Counsel for appellee have not pointed out any satisfactory reason why the two acts are repugnant to or irreconcilable with each other, and we are unable to see any. While the latter act prescribes certain duties, and clothes township trustees with certain powers, which existed under former laws, the reform law prescribes methods and places upon such officers wholesome limitations. These two statutes may well stand together, and, this being true, it is our duty to construe them *in pari materia. Board, etc.,* v. *Marion Trust Co.,* 30 Ind. App. 137; *Shea* v. *City of Muncie, supra,* and authorities there cited.

Having reached the conclusion that the latter did not repeal the former act, the law as applied to the facts disclosed by the complaint is settled by the case of *Peck-Williamson, etc., Co.* v. *Steen School Tp.,* 30 Ind. App. 637.

The complaint fails to show a compliance with the provisions of the statute, and by express language of §11 of the act, the contract for the purchase of the supplies is "null and void." That which the statute declares to be "null and void" can not be made valid by judicial construction or decision.

Judgment reversed, and the court below is directed to sustain the demurrer to each paragraph of the complaint.