ZUMPFE ET AL. *v.* PICCADILLY REALTY COMPANY ET AL.

[No. 27,000. Filed March 23, 1938. Rehearing denied June 7, 1938.]

*Smith, Remster, Hornbrook & Smith, Paul Y. Davis, Kurt F. Pantzer, Ernest R. Baltzell,* and *William G. Sparks,* for appellants.

*John G. McNutt,* for appellees.

SHAKE, J.—On November 14, 1931, The Indianapolis Coal Company recovered a judgment in the Marion Probate Court against the Piccadilly Realty Company, and obtained an order for the appointment of a receiver, with the usual powers, to take charge of its assets and manage and conduct its business. The receivership assets consist of certain real estate in the city of Indianapolis, upon which is situated an eight-story building known as the "Piccadilly Apartments." Chester L. Robinson was originally appointed as receiver, but he has since been succeeded by the appellee E. Kirk McKinney.

On December 7, 1935, the receiver filed with the court of his appointment a petition wherein he recited that a demand in writing had been made upon him by the appellants herein that he apply to the court for an order to sell the assets of said receivership within ten days. In his petition the receiver asked that notice issue to the parties in interest, that a hearing be had, and that the court instruct him with reference to his conduct in the premises. The petition was sustained and notice duly issued and served.

Thereupon, the appellants filed a cross-petition in which they showed that the Piccadilly Realty Company was incorporated under the laws of Indiana on August 23, 1927; that it had authorized preferred stock in the aggregate amount of $300,000, consisting of 3,000 shares

of a par value of $100 per share, of which 2,850 shares were issued and outstanding; that the remainder of said shares had been redeemed and retired; that the appellants were each preferred stockholders of said corporation, and constituted a protective committee for all of the preferred stockholders under an agreement in force; that $35,000 of said preferred stock had matured and was due; that there were accumulated unpaid dividends aggregating $68,400. The appellants asked in their cross-petition that the receiver be directed to sell the assets of his trust upon such terms and conditions as the court might deem proper. To the appellants' cross-petition the receiver filed his answer in general denial. The Piccadilly Realty Company, through one firm of attorneys, filed an answer consenting to the sale, and through another, an answer asking the court to deny the appellants' petition.

The matter came on for hearing before the court, and, after considering the evidence, the court rendered its judgment denying appellants' cross-petition, and directing the receiver to continue in charge of the assets of his trust. There was a motion for a new trial on behalf of the appellants, in which it was assigned that the decision of the court was not sustained by sufficient evidence and was contrary to law. This appeal followed and the assignment of error challenges the ruling on the motion for a new trial.

The appellants contend that there was error in overruling their motion for a new trial because the evidence was conclusive that the preferred stockholders were entitled to the redemption of their shares and the liquidation of the assets of the corporation by sale. The appellee receiver contends, on the other hand, that: (1) The trial court was without jurisdiction to order a sale because the judgment appealed from was not final and not such an interlocutory order from which appeals may

be taken; (2) there was no trial within the statute providing for new trials; (3) that an order of sale and for the liquidation of the company would have been outside the issues, and erroneous; (4) that the court had no power, under the facts shown, to liquidate the assets of the corporation by sale; (5) that the matter submitted to the court for determination was one of discretion, and no abuse of discretion was shown; and (6) that under the evidence the preferred stockholders were not entitled to the liquidation of the receivership assets. Since the sole proposition relied on by the appellants and the appellees' sixth proposition are the same and relate to the sufficiency of the evidence, we shall pass them momentarily and consider first the appellees' other propositions, urged to defeat appellants' contention.

The parties agree that this is not an appeal from an interlocutory order, and this is correct, since the situation does not bring the matter within the provisions of our statute authorizing such appeals. Section 2-3218 Burns' Ann. St. 1933, §490 Baldwin's Ind. St. 1934. This proceeding, if reviewable, must rest upon the general provisions of the statute authorizing appeals from final judgments. Section 2-3201 Burns 1933, §471 Baldwin's Ind. St. 1934. Appellees say that there was no such final judgment and call attention to the fact that the proceeding was begun by the filing of a petition by the receiver for directions and instructions. If this was the only showing of an adversary proceeding, appellees' contention would have much merit. But after the filing of the receiver's petition for instructions the court ordered notice to appellants by summons, in response to which they appeared and filed a cross-petition, demanding affirmative relief. Issues were formed, a hearing had, and the court entered a judgment denying the cross-petition and ordering the receiver to continue with the administration of his trust.

A final judgment from which an appeal will lie is one which determines the rights of the parties in the suit, or a distinct and definite branch of it, and reserves no further question or direction for future determination. *Home Electric Light and Power Co.* v. *The Globe Tissue Paper Co.* (1896), 145 Ind. 174, 44 N. E. 191. Applying this test we are constrained to hold that the order entered by the court in the instant case constituted an appealable final judgment. It amounted to more than a mere direction to the receiver. It adjudicated that appellants were not entitled to an order of sale of the real estate involved under their cross-petition, to which answers had been filed by the parties in interest, thereby forming an issue for the determination of the court.

In *General Highways System, Inc.* v. *Thompson et al.* (1927), 88 Ind. App. 179, 155 N. E. 262, 156 N. E. 407, it was held that a judgment rendered in a receivership on an intervening petition objecting to the allowance of a mortgage executed by the insolvent as a preferred claim, was a final judgment, from which an appeal could be taken as the only questions presented by the petition were finally determined. And it has also been held that the allowance of an intervener's claim against a receiver constitutes a final judgment from which an appeal may be taken. *Indiana National Bank of Indianapolis* v. *Danner, Receiver* (1930), 204 Ind. 709, 170 N. E. 327.

The judgment appealed from was final and not interlocutory, and a motion for a new trial was proper. It is not necessary, to justify a motion for a new trial, that the issues be formed by a complaint and a demurrer, or by a complaint and answer. There has been a trial, in contemplation of the statute authorizing a new trial, when there has been "a judicial examination of the issues, whether of law or of fact, in an action."

Sections 2-1901, 2-2401 Burns 1933, §§324, 368 Baldwin's 1934.

Appellees are in error in their assumption that the issues were confined to those stated in the original complaint in the lower court, wherein The Indianapolis Coal Company sought a judgment and the appointment of a receiver. Our code makes specific provision for intervention (§2-222 Burns 1933, §38 Baldwin's 1934), and it is the policy of the law in all proper cases to avoid a multiplicity of suits. We perceive no practical difference in the situation of the parties since appellants appeared, in response to summons, and filed a cross-petition, than if they had intervened on their own motion and filed a cross-complaint. The result attained was the same and the means adopted were proper and appropriate. Our conclusion in this regard does not violate the rule laid down by this court in *The Wayne Pike Co.* v. *Hammons et al.* (1891), 129 Ind. 368, 382, 27 N. E. 487. In that case it was held that an order for the sale of receivership assets was without the issues, but the facts disclosed that the receivership was not of a general nature, but one brought by a stockholder against a corporation and its officers merely for an accounting. Here, on the other hand, the plaintiff obtained a money judgment, and the appointment of a receiver on the ground that the defendant was in imminent danger of insolvency. The property of the corporation which passed into the hands of the receiver thereby became a trust fund for the benefit of all those entitled to share in its distribution. *Board of Commissioners of Marion County* v. *The Marion Trust Co.* (1902), 30 Ind. App. 137, 142, 65 N. E. 589. It cannot be said that the court possessed no power to order a sale in a receivership. Our statute inferentially recognizes that such power exists. Section 3-2613 Burns 1933, §1153 Baldwin's 1934. The order of sale sought by appellants' cross-petition was a matter

within the jurisdiction of the court, and this jurisdiction was properly invoked by the pleadings.

This leaves for consideration what we perceive to be the important question presented. Was the decision of the court, denying appellants' cross-petition for the sale of real estate, contrary to law? To find the answer to this question it becomes necessary for us to determine the nature and extent of the liability assumed by the Piccadilly Realty Company when it issued and sold the preferred stock held by the appellants. The statute under which the company was incorporated provides, among other things, that "such preferred shares may be redeemed or acquired by the corporation on such terms, and in the manner and at such times as may be provided in the original or amended articles of incorporation.' Acts of 1923, ch. 181, §1, p. 530; §4836 Burns 1926. The evidence produced at the hearing showed that it was provided in the articles of association that, "the Company shall, out of its earnings or thru the proceeds of the sale of additional common stock, redeem its outstanding preferred stock . . . at such time or times as may be fixed in the certificates issued therefor." The preferred stock certificates contained the following stipulation: "Upon failure of the Company to comply with all the obligations and agreements herein contained, or on failure of the Company to pay any dividend hereon, at the time fixed therefor, whether such failure be on account of lack of funds sufficient to lawfully pay the same, or from any cause whatsoever, the shares represented hereby shall be immediately redeemable, and, if the Company fails to redeem the same on demand, the holder hereof may require the liquidation of the Company and the application of its assets to the payment of its creditors and stockholders in the order provided by law."

It was further shown on the hearing that the Piccadilly Realty Company had violated other provisions of the

underwriting agreement, by virtue of which said preferred stock had been issued and sold, in this: That it had failed to make certain sinking fund deposits for the purpose of paying dividends upon, and retiring its said preferred stock; that it allowed its property to become encumbered by indebtedness which produced a condition of imminent insolvency, resulting in receivership; that there had been no earnings available to redeem the preferred stock, and that no stock of any kind had been authorized, issued, or sold since the preferred stock had been disposed of.

Appellees contend that appellants were not entitled to have the assets of the trust liquidated by sale, since they were bound to know that dividends could not be paid if they were not earned, and since the preferred stock could only be redeemed, under the provisions of the articles of association, from earnings or from "the sale of additional common stock," it having been shown that there had been no sales of common stock and that the earnings had been insufficient to pay dividends or for redemption purposes. Appellees say that the rule laid down by this court in *Allied Magnet Wire Corp.* v. *Tuttle* (1926), 199 Ind. 166, 154 N. E. 480, 156 N. E. 558, 50 A. L. R. 252, is controlling. Appellants assert, on the other hand, that they are entitled to have a liquidation because of the specific terms of the preferred stock certificates, which provide, among other things, that: "Upon failure of the Company to comply with all the obligations and agreements herein contained, or on failure of the Company to pay any dividend hereon, at the time fixed therefor, whether such failure be on account of lack of funds sufficient to lawfully pay the same, or from any cause whatsoever," the preferred stock should become immediately redeemable; that the corporation had also violated other provisions of its contract, entitling appellants to a sale of the assets, in that it

had failed to establish and maintain a sinking fund, had suffered its property to be encumbered with liens, and was in imminent danger of insolvency. Appellants rely upon the rule laid down by this court in *Jones et al.* v. *Becker et al.* (1937), 212 Ind. 248, 8 N. E. (2d) 587, and appellants say that to the extent that the latter case conflicts with the case relied on by appellees, the former is overruled. Many other authorities are cited by both parties, but the above statement fairly presents their respective contentions.

*Allied Magnet Wire Corp.* v. *Tuttle, supra,* was a case where the appellee owned all of the outstanding preferred stock of an Indiana corporation. The articles of association provided that the failure to pay any dividend on the preferred stock for a period of ninety days after maturity and notice would cause all of the preferred stock to become due and payable at the option of the holders, and that, in such event, the holders should have the right to require the dissolution of the company and the application of its assets to the discharge of its liabilities and the redemption of its preferred stock. There was in effect at the time the corporation was formed and the preferred stock issued, as there is now, a statute making it unlawful to pay dividends except from actual net earnings, surplus, or undivided profits. The trial court appointed a receiver, and this court reversed the cause, with directions to sustain a demurrer to the complaint. The following quotation from the opinion of the court is significant (p. 172) : "Recalling the particular acts which appellant was prohibited from doing, either with or without the consent of the preferred stockholders, and referred to in the articles of incorporation, in the certificate, and in the section of the act herein set out, there is no claim of a violation of a single one of them, unless it can be said that its failure to pay the July 1, 1924, dividend on its preferred stock may be so

considered. In this connection it is important to know that there is no attempt to show by the complaint that appellant was insolvent or in imminent danger of insolvency . . . nor does it appear that appellant's failure to pay dividends was occasioned by the acts of any of its officers or directors whereby its property had been dissipated, or through any neglect or mismanagement of its corporate affairs."

It will at once be seen that the above case is clearly distinguishable upon the facts from the one that we have before us here. In the instant case it had been adjudicated that the corporation was in imminent danger of insolvency and a receiver had been appointed on account thereof. The corporation had also failed to take any steps to redeem its matured preferred stock from the sale of additional common stock. It had suffered its physical assets to become encumbered with a judgment lien, and it had violated the provisions of its contract with its preferred stockholders with respect to the establishment and maintenance of a sinking fund.

*Jones et al.* v. *Becker et al., supra,* was an appeal from an order appointing a receiver for a domestic corporation and for the sale of its real estate. The power of the court to appoint a receiver and to subject the assets to sale was challenged upon the same grounds as in the case of *Allied Magnet Wire Corp.* v. *Tuttle, supra.* The court considered that case and made the following observation (p. 253) : "The case at bar presents facts entirely different from that case. In that case there was no question of multiplicity of suits, or a possible preference arising among the stockholders, since all the preferred stock in the Allied Magnet Wire Corporation Case was owned by one person. There, none of the stock had matured, and no day definite for its maturity was fixed by the articles of incorporation or otherwise. In the case at bar the records show the possibility of a multiplicity of suits resulting in a preference to some stock-

holders over others; that $17,000 of the preferred stock was past-due and matured at the time the receivership proceedings were commenced; that a large sum was in default in payment of dividends upon preferred stock; that there were no means or property from which an income could be derived sufficient to pay dividends and retire matured stock; that to permit the realty company to continue would increase the losses and the possibility of a preference of one stockholder over the other."

It seems to us that the facts in the present case are even stronger than in *Jones et al.* v. *Becker et al.,* *supra,* and, on the authority of that case, we hold that appellants were entitled to have a liquidation of the assets of the corporation in the receivership proceedings. In this conclusion we do no violence to the rule enunciated in *Allied Magnet Wire Corp.* v. *Tuttle, supra,* and we justify the conclusion we have reached upon the theory that there are ample facts in the record entitling appellants to their remedy, notwithstanding the restrictions imposed by the statute, the articles of incorporation, and the provisions of the preferred stock certificates. We refer to the adjudication of insolvency, previously made, the failure of the corporation to comply with its sinking fund agreement, and the fact that it had suffered its property to become encumbered with judgment liens.

As heretofore pointed out in this opinion, the facts of this case are practically undisputed, consisting of written documents and a stipulation of the parties offered in evidence at the hearing. Under these circumstances the record does not present for review the question of an abuse of discretion on the part of the trial court, for the reason that the court was not entitled to exercise a discretion in determining the rights of the parties. *McFarlan* v. *Fowler Bank City Trust Co.* (1938), ante 10, 12. N. E. (2d) 752.

The cause is reversed, with directions to the trial

court to set aside its order denying appellants' cross-petition for a sale of the receivership assets. The court is further directed to grant and sustain appellants' said cross-petition and for further proceedings not inconsistent herewith.

## ON PETITION FOR REHEARING.

SHAKE, J.—The appellees have asked for a rehearing and the appellee Smith has presented a verified petition to modify the mandate. After carefully considering the petition for rehearing we are content to let the opinion stand.

The petition to modify the mandate discloses that since March 19, 1936, when the hearing was had in the court below, resulting in the order appealed from, there has been a substantial and material change in the factual situation. It is now made to appear that during the pendency of this appeal all liens against the property of the Piccadilly Realty Company have been discharged; that in June, 1937, a dividend of $4 per share was paid, and in December one of $1 per share was paid on the preferred stock.

This court rendered its opinion herein and entered its mandate upon the situation and facts properly disclosed by the record. No showing having been made of a change in conditions subsequent to the date of the order appealed from, it was assumed that a retrial would disclose the same facts. It was not our purpose to foreclose the parties against a reconsideration on changed conditions.

It is accordingly ordered that the mandate herein (the same being the last paragraph of the original opinion) be and the same is modified to read as follows:

Reversed, with directions to the trial court to set aside its order of January 8, 1937, which denied appellants' cross-petition for a sale of the receivership as-

sets. The trial court is further ordered to grant a re-hearing on appellants said cross-petition and to enter such order or orders as to it shall appear to be just and proper, not inconsistent with this opinion.